Thank you, Your Honor. My name is Daryl Manhart. I represent Plaintiff Rose O'Connell. I hope to reserve about three minutes for rebuttal, if I may. Your Honor, Your Honors, there are two reasons that the plaintiff submits that the summary judgment shouldn't have been granted. The first is the rule that was adopted by the Arizona Supreme Court in Griever is not as narrow as the district court applied. And the second is that even under that narrow application as applied, there are fact disputes on the meaning of the various documents that were submitted with respect to the summary judgment motion. If we go to those documents, they're all in the excerpts of record. The death certificate is one of them. The information in the death certificate that the insurance company primarily relies upon is in boxes, I think they're numbered 47 and 48, but they're called parts 1 and 2. Part 1 lists the cause as pneumonia. Part 2 is where the insurance company relies and says listed as a contributing cause is end-stage Parkinson's disease. However, in the rest of that box, it doesn't just say contributing cause. It says, but not resulting in the cause listed above. That's ambiguous, Your Honor. How can end-stage Parkinson's disease be a contributing cause and yet not be – not result in the cause of death listed as pneumonia? Was there any other evidence in the case that Parkinson's disease was in an advanced stage or was debilitating? Your Honors, there are certainly many references to the historical fact that Mr. O'Connell had Parkinson's disease within various medical records attached to the moving papers. In some cases, I saw references to severe. I don't remember if I saw the word advanced. There was no testimony taken as to particularly what either of those adjectives might have meant. If you look at the – I'm trying to think what the attending – the word attending I couldn't come up with. Attending physician statement from Dr. Carlson. Was there any evidence about where that word end-stage, how that got into the documentation? No, Your Honor. The two doctors who are primarily relied upon by the parties on these documents, Dr. Carlson and Dr. Goebbeler, their depositions had not been taken when this motion was made. So we have no testimony from either one of them clarifying what they meant and their entries in the documents. Counsel, under your theory of the case, is there a sole proximate cause of death? I would say that the pneumonia is the sole proximate cause of death, Your Honor. I'm sorry if I'm – my pause, I guess, is that I'm arguing, though, that the pneumonia is a result of being immobilized because of the hip fracture and that's what makes the accident the cause of the death as opposed to Parkinson's disease. No, and by the same token, the hip fracture may be conditioned upon an inability to walk up and down bus stairs because of disease, right? Well, Your Honor, there's certainly evidence that Mr. O'Connell didn't – you know, had some difficulty walking, but it's also in the moving papers of J.C. Penny that they were not arguing that his Parkinson's disease caused the fall. So if you take that away, then you have their only argument being that his Parkinson's disease caused him to be weaker or more susceptible to a pulmonary infection upon the exposure to the pneumonia bacterium. And do you have a question, Your Honor? I'm sorry, I hesitated. I thought I saw a question coming. The document upon which J.C. Penny Company really relies is Dr. Gebloh's response to their letter asking whether there was any disease to which he referred to the Parkinson's disease causing the weakening of the pulmonary system. And that's their best evidence, Your Honor, and that's where on my argument on the factual dispute you have, contrary to that, the attending physician's statement of Dr. Carlson, which nowhere mentions Parkinson's disease, although he's certainly well aware of it because it's in his medical records, the references to it. But when he's asked by J.C.'s Penny specifically what the cause of death is, it's pneumonia. When the answer to the question is, are there any contributing events, he lists the broken hip. He never says anything about Parkinson's disease. All right. The best position you find yourself in here is asking for a trial. That's correct, Your Honor. Not asking for you to grant the cross-motion for summary judgment that was made below. If I can ---- Do you want to reserve time or ---- I still have a few more minutes. Oh, certainly. It's all your time. I wasn't sure ---- I wanted to move on, though, to the other aspect of the argument, which is that the rule was too narrowly applied. If you look in the Grieber case, its source is the Wisconsin case, Cretny, and it specifically approves of that rule and adopts it. And when you look at the Cretny case, it certainly cites the factors that Grieber repeats, but also goes on to state that a mere weakened resistance or a person being of advanced age is not sufficient to invoke the cause of death as being caused by the weakened condition to prevent coverage. And if you look at the Dickerson case, which this very same Arizona Supreme Court decided in the very same year as Grieber, an individual who had gout was found to not be deprived of the benefits of a disability policy with similar language, simply because he was asymptomatic in the disease at the time, and it's what's described as being overbalanced while changing attire, causing him to put weight on a foot, caused him to then experience the gout symptoms and be disabled for several months. That case was sent back for a trial, the Arizona Supreme Court saying even under Grieber, it was possible for a jury to find that it did not invoke Part C, the third element of the rule, which is the only one that prevents coverage. Thank you. I will reserve the rest of my time if I may. We'll hear from the insurance company. Thank you, Your Honor. Leslie Christine on behalf of J.C. Penney Life Insurance Company. There are really two relevant points. One is Grieber the rule of law, and second, under the rule of law, is there a viable claim for benefits that should go to trial? On the first, it's really important to remember that both parties acknowledged to the district court that Grieber was the rule of law. Even in their motion for new trial, plaintiffs didn't argue that the court should be considering a different standard or applying Grieber in a different way. In fact, plaintiffs' motion for new trial at page 3, which is CR 53, and I quote, stated the applicable law is as found in Grieber. In page 9 of their reply before this court, they now say, Grieber has been eroded. That is their term. And interestingly, and so this is not a new label. This is a new argument. It's a new legal standard that should have been addressed in front of the district court so the district court had an opportunity to consider what was the applicable law. It shouldn't be raised for the first time on appeal. But interestingly, the Dickerson case, which they claim eroded Grieber, was addressed by this very court. In our supplemental authority, we submitted the case of Button v. Connecticut General. It's a 1988 Ninth Circuit court case where the Ninth Circuit reviewed Grieber and Dickerson and held that Dickerson didn't erode Grieber. It applied the standard in Grieber to a disability case. And that's why this court in Button applied Grieber to a disability case. Counsel, on this record, do you think we can find that there's no dispute of fact between the parties? Absolutely, Your Honor. And this is why. First of all, when you look at the applicable rule being if a preexisting disease cooperates with death, there is no accidental death coverage, on the facts of this case, there is no debatable issue that would justify a jury trial, because there's no question Mr. O'Connell had a disease, something that would qualify as a as an impairment. Isn't it possible that reasonable minds could differ about the Butt-for rule? If he hadn't broken his hip, he wouldn't have been flat on his back for 13 days in the hospital, and you don't have to be a medical expert to know that there's a lot of anecdotal evidence that getting flat on your back in a hospital is a good way to get pneumonia. Okay. If I can tie both of those together, the Butt-for rule isn't the law in Grieber. In fact, if I could ask the Court to consider two cases that Plaintiff O'Connell has cited, one is the Evans case where the Court said that we are no longer, this is a Montana case, we are no longer going to apply the Grieber-like rule, which is if there's a preexisting disease that cooperates with the accident to cause death, there's no accidental death coverage. They basically went to a rule that said if there is, if the accident creates an unbroken chain of events, then there will be coverage. And they basically said that recovery may be had under this new rule in Montana, even though the disease appears to have actually contributed to the cause of death as long as the accident sets in this chain of, unbroken chain, so the Butt-for test. But that rule clearly would not apply in Arizona, because consider the case of Grieber and the case of Watkins out of Arizona. In Grieber, the preexisting asthma and heart condition basically created a weakness that when the chest trauma occurred, the treating physician testified that the blow to the chest was the contributing factor that produced death. So there's your Butt-for test. But for the accident, he wasn't going to die right then. And basically the Court said that doesn't matter, because the medical evidence shows that the preexisting disease weakened his, it created the fertile field, is what the treating physician said, created the fertile field for the pneumonia and cooperated with the accident to cause death. The same is true in the Watkins case, also decided by the Arizona Supreme Court, where there was the arterial plaque that restricted the arteries that contributed to causing this fatal blood clot, but it was also the fact that he was running around chasing steers that had gotten away that led to the increased blood flow that caused the fatal blood clot. In this case, again, we have a severe disease that was active at the time of the accident, so there's no question there was disease, there's no question it was active at the time of the accident, and the undisputed medical testimony was that it was a significant condition contributing to cause death. The important thing, the Court found below ---- Of course, we've got in Rule C that the two are acting together. No one's saying that he would have died of Parkinson's that specific day. And in response to a previous question in ---- He was in a very good condition to be running up and down bus stairs. He obviously had very severe Parkinson's disease. He'd had it for 17 years. Dr. Harris's records, which are in the attachment to our statement of facts, it is CR, if you're interested, CR 34, Exhibit B. But Dr. Harris explained that, yes, he had trouble walking, Parkinson's disease weakens your respiratory system, they're subject to repeated pneumonias, but we did not try to debate that the Parkinson's caused the fall or that the Parkinson's caused the pneumonia, because people can get pneumonia without Parkinson's disease. So this is not the cause of death. You've eliminated that. Not at all, no. The Parkinson's disease may not have caused him to fall, may not have actually caused pneumonia in this case, but it was a contributing factor. There's no question of that, because without ---- Well, it was an existing condition. It was a preexisting condition that the medical ---- And it's the fall. Exactly. And the two cooperated together, as Dr. Gribla explained, both in the death certificate and in the ---- and in his separate report, that the fall basically compromised his respiratory status, which was already weakened by Parkinson's disease, leading to pneumonia and respiratory failure. If I were to ask you the question I asked a posting counselor, is there a sole proximate cause, you would say no. Right. Under Gribla Rule 3 ---- Contributing causes. Exactly. They are cooperating causes, concurrent causes that cause death. And under ---- One of which is accidental. One is accidental, and one is the preexisting disease, which is exactly what is ---- The language of the policy is directly and independently. Is that correct? Exactly. Under accidental death coverage, as the Gribla Rule recognizes, it is the plaintiff's responsibility to determine whether or not there is a preexisting disease contributing. Because if it is a contributing factor, then the accident cannot be deemed to be the sole and independent cause of death. The burden that the plaintiff has to carry on a summary judgment is that there is no dispute of fact. Exactly. But the relevant fact is whether or not there is preexisting disease contributing. There may be a difference of medical opinion on the record made to date. Your Honor, plaintiffs went out and hired a Parkinson's expert. I mean, that is her area of expertise. Presumably, they were looking for evidence to support their burden of proof. That's not unusual in the PR case. No, you would expect it, yes. Everybody has a plaintiff's doctor and a defendant's doctor. You would expect it. But what is startlingly odd is that this Parkinson's expert wrote up a report that says, yes, you had Parkinson's, but offers absolutely no evidence on the vital issue, whether or not the Parkinson's played a role in contributing to death. And if I might quote from the Grieber case, the vital question is whether pneumonia was induced solely by accident, under Rule A or B, as set forth above, or whether it was caused by the accident with the preexisting conditions. In that case, it was myocarditis and asthma. With the preexisting conditions as contributing causes. So basically, that's what the district court found. These questions of fact as to whether or not the Parkinson's might have played a role in causing the fall or causing the pneumonia are irrelevant. The only vital question is whether or not there was a question of fact on whether the accident alone caused the death or whether it was the accident contributing. Summary judgment. Pardon? Grieber case on summary judgment. Your Honor, that's got kind of a convoluted path. But basically, there was originally a... Arizona is a state court, isn't it? The standard was exactly the same in Grieber. On the 1944 case, you'll find that basically it was a directed verdict. And the court's review is exactly the same on directed verdict. Yeah, I know. There was a convoluted path out of the 1940 case. But when it came back in 1944, it was on directed verdict. In the hospital for a few days. Then he went home. Then he went back to the hospital. And about three months went by before he died. And I can understand how you could say there was no dispute that there were various contributing causes. And if you have contributing causes, the accident isn't the sole cause, can it? And that seems to be the formula left over from Grieber. You know what? You're right, but the question... I'm not sure the audience didn't disagree in this case about the contributing cause element. There is absolutely no evidence anywhere in this record that disputes the death certificate that states that the Parkinson's was a significant condition contributing to death or that the Parkinson's had weakened the respiratory system just like the asthma would have in Grieber and cooperated to cause death. The timing of the pneumonia, if I may, in Grieber is irrelevant because in the Grieber case, just like this case, it was assumed that the accident may well have caused the death. And basically the Court said that the testimony was that the blow to the chest was a contributing factor that produced death, but the vital question was whether or not the blow alone produced death or the blow acting in cooperation with the preexisting conditions. Thank you, counsel. Your time has expired. Mr. Van Hart, you have a little time reserved. Thank you, Your Honors. Your Honor, excuse me, Your Honors. If you look at the attending physician's statement, he omits Parkinson's as a cause. If you look at Dr. Mahant's opinion, which is the expert for plaintiff that Ms. Christine was referring to, the very last sentence of that report describes the initial event as the fall with the cascade of events that follow leading to the pneumonia and death. Dr. Mahant was well aware of the Parkinson's. It's noted in her report, but it is not the initial event. So she is, by at least inference, excluding the Parkinson's. Certainly if these doctors had all been deposed, this would have been addressed more thoroughly, but that's what you have from the documents, a conflict between what the insurance company points to in Dr. Griebel's letter when you compare it with the Parkinson's. The Griebel case, there was a distinction there factually in that Mr. Griebel was hospitalized following the automobile accident. He had myocarditis. He was released from the hospital, and two or three months later comes back with pneumonia, which the testimony, according to the opinion in the case, generally if it's a traumatic pneumonia, it develops within a short time. So the pneumonia there distanced in time from the event does not seem to matter. That wasn't the holding of the case, was it? I'm sorry, Your Honor. That wasn't the holding of Griebel, was it? I mean, certainly you're talking about three months versus 13 days, but apart from that, what's the difference? Well, the holding is the adoption of the cretiny rule. I'm not sure what your distinction is, Your Honor. It's a significant factor in that the testimony indicates that that was not traumatically caused pneumonia. The trauma was the automobile accident. So if you have the pneumonia is not traumatic, then it's not associated with the automobile accident. It seems more likely associated with, in fact, according to that case, the testimony, the only testimony on the cause was that it was from the myocarditis, which was the existing disease. We do not have that here, Your Honor. We have pneumonia developing while he's in the hospital. In fact, he's examined the day he's admitted, and there's no evidence of pneumonia. The evidence of pneumonia is the very next day. Also, Your Honor, with respect to the burden of proof here, certainly all that the plaintiffs are required to do in responding to the motion for summary judgment show that there's evidence that exists. That exists by virtue of comparison of the attending physician's statement and Dr. If you look at the three parts of that Grieber test, while my initial thought was that Part B was what applied, when I look at Dickerson, I wonder if maybe you could make an argument that Part A applies. But if we take Part B and say, Why isn't it that the disease is caused by the immobilization, and that's a result of the hip fracture, J.C. Penney's company would say, Yes, but that existing disease cooperates, because we know from Dr. Griebel's letter that his resistance was weakened. But if you look at Cretny, it says merely having weakened resistance doesn't invoke that rule. So when you take that away, there's nothing left by which J.C. Penney can apply Part C. Thank you, counsel. Thank you. The case just argued will be submitted for decision, and we will hear argument in Mothershed v. The Justices.
judges: Goodwin, Beezer, O'Scannlain